IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DAMARIS WALKER, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 12 C 3120 |
| | ) | |
| WELLS FARGO BANK, N.A.; U.S. BANK, | ) | Judge Virginia M. Kendall |
| N.A.; and MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Damaris Walker brings this suit against Defendants Wells Fargo Bank, U.S. Bank, and Mortgage Electronic Registration Systems (hereafter "MERS") for Wells Fargo's alleged violation of the Fair Debt Collection Practices Act (hereafter "FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count I); unjust enrichment (Count III); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (hereafter "ICFA"), 815 ILCS 505/1, *et seq.*, and the Uniform Deceptive Trade Practices Act (hereafter "DTPA"), 815 ILCS 510/1, *et seq.* (Count IV); and to quiet title against Wells Fargo, U.S. Bank, and MERS (Count II). Walker attempts to assert an additional claim for "Violation of Illinois Fair Debt Collection Act," but Illinois has no such act on record. Walker's claim in Count V of her Complaint alleges wilful, malicious, and egregious violations of the ICFA and DTPA on the part of Wells Fargo.

1

This suit arises out of the securitization of a Mortgage and Note on Walker's property, which were deposited into a securitized trust called CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-10. Wells Fargo was the servicer for Walker's loan, along with other loans in the Trust. Walker alleges that the Trust was terminated and dissolved on March 30, 2006, based on a document entitled "Form 15 Certification and Notice of Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports under Sections 13 and 15(d) of the Securities Exchange Act of 1934" (hereafter "Form 15"), a copy of which Walker attached as an Exhibit to her Complaint. Walker argues that as a result of the alleged dissolution, the Trust no longer owns the Note and Wells Fargo, as servicer for the Trust, is no longer Walker's servicer and lost all rights to collect payments under the Note. As a result, Walker alleges that the Defendants' subsequent activities with respect to the Note and Mortgage were illegal.

The Defendants argue that Form 15, which is attached to the Complaint, flatly establishes that the Trust was not terminated or dissolved. Thus, according to the Defendants, Walker's claims under the FDCPA, the ICFA, the DTPA, as well as her claims for unjust enrichment and to quiet title are scotched because all of her claims rely on the presumption that the Trust was terminated. Accordingly, the Defendants' move to dismiss Walker's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state

a claim upon which relief can be granted. For the reasons set forth herein, the Defendants' Motion is granted and Walker's Complaint is dismissed with prejudice.

## I. Background

In deciding the instant Motion, the Court assumes the veracity of the well-pleaded facts in the Complaint and construes all reasonable inferences in favor of Walker, the nonmoving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)); *accord Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Although the well-pleaded facts are entitled to the presumption of truth, documents attached to the Complaint control over contrary pleadings and where an Exhibit conflicts with the allegations of the Complaint the Exhibit controls. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (citing *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)); *see, e.g., McClinton El v. Potter*, Nos. 06 C 5329 and 06 C 6839, 2008 WL 5111182, *4 (N.D. Ill. Dec. 4, 2008). Therefore a plaintiff may plead herself out of court by attaching documents to her complaint that indicate that she is not entitled to relief. *See Massey*, 464 F.3d at 645.

Walker owns and possesses the Subject Property, which is identified by its PIN 20-10-110-006-0000, in Cook County, Illinois. On July 5, 2005, Walker signed a mortgage Note in favor of RBC Mortgage Company (hereafter "RBC"), the original mortgagee of the Subject Property. On the same date, to secure this loan Walker signed the Mortgage that

conveyed a security interest in the Subject Property to RBC, as lender, with MERS "as a nominee." Soon thereafter, RBC endorsed, sold, and transferred the Note and the Mortgage to Credit Suisse First Boston Mortgage Securities Corporation (hereafter "Credit Suisse").

On or about September 1, 2005, Credit Suisse securitized and transferred the Note and the Mortgage to CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-10 (hereafter "Trust 2005-10"), a mortgage-backed-securities trust settled under the laws of the State of New York and registered with the Securities and Exchange Commission (hereafter "the SEC"). The SEC publishes Trust 2005-10's founding agreement and its Rule 424(b)(5) Registration Prospectus online through its EDGAR system. The 424(b)(5) Registration Prospectus identifies the servicer of the loan as Wells Fargo, the Trustee as U.S. Bank, and the date on which the Note and the Mortgage were transferred to Trust 2005-10. Thus, Wells Fargo was the servicer for loans secutitized in the Trust, including Walker's loan.

On January 26, 2006, Trust 2005-10 allegedly filed its Form 15-15D, "Notice and Certification of Termination" with the SEC. Walker alleges that on March 20, 2006, Trust 2005-10 filed its final 10-K Annual Report and was terminated and dissolved. The final Form 10-K states that, as of the alleged date of termination, the Trust allegedly had no business, no public trading market, no select financial date, no disclosures, no financial

statements and supplementary date, no directors and executive officers, no relationships and related transactions, and no account services. Walker alleges that therefore, on information and belief, Trust 2005-10 was dissolved on or before January 26, 2006.

On the same date, under the laws of the State of New York, all of the assets of Trust 2005-10 were allegedly distributed to the certificateholders of the Trust, and they allegedly became the only mortgagees—the only legal holders of the Note and Mortgage. After the Trust was allegedly terminated, Wells Fargo, allegedly without any interest in the Note or the Mortgage, and without any privity of contract with the mortgagees, held itself out as the servicer of the Note and Mortgage and sent purported mortgage bills to Walker each month. Walker, relying on Wells Fargo's allegedly false representation that it was the servicer of the Note, paid many of these bills.

On December 30, 2006, Wells Fargo, through its America's Servicing Company division, sent a Form 1098 to the IRS showing the amount Walker paid to it in 2006. On February 28, 2012, Wells Fargo, through its America's Servicing Company division, sent a letter to Walker and enclosed a "Payment History/Customer Account Activity Statement" showing all amounts paid by Walker to Wells Fargo since March 1, 2009.

Walker alleges that there is no evidence that MERS was ever a "holder" of either the Note or the Mortgage in this case. According to Walker, MERS exists—in accordance with its name—simply as an electronic registration system to track the transfer of notes and

mortgages. Walker claims that MERS, pursuant to its standard practices and procedures, does not exercise physical control or custody over actual notes or mortgages. Walker alleges that there is no recorded or other evidence that Trust 2005-10 ever sold the Note or the Mortgage to any other entity.

Walker alleges that beginning on or about March 30, 2006, Wells Fargo knowingly and intentionally communicated, and continued to communicate, deceptive, false, fraudulent, and misleading statements to Walker representing or implying that it was and is the servicer of the Note and the Mortgage. At this time, Walker alleges that Wells Fargo in its communications with her falsely represented that the mortgage debt payments were owed to it. Furthermore, Walker alleges that Wells Fargo falsely represented that it had standing and authority to foreclose on the Mortgage. She also alleges that Wells Fargo used false, deceptive, and misleading representations in connection with the collection of the alleged debt and falsely represented to Walker the character, amount, and legal status of the alleged debt. Walker alleges that Wells Fargo falsely represented to her that nonpayment of the alleged debt would result in the sale of the Subject Property. Walker alleges that Wells Fargo has used false representations and deceptive means to collect or attempt to collect the alleged debt from her in an amount not expressly authorized by the agreement creating the debt and not permitted by law. Walker further alleges that Wells Fargo has failed to validate her alleged debt as required by 15 U.S.C. § 1692g.

Defendants Wells Fargo, U.S. Bank, and MERS are joined as they are allegedly claimants to an interest in the Subject Property adverse to that of Mr. and Mrs. Pirard. MERS's name appears on the title as "nominee," and Walker alleges that its interest has never been properly and formally released. Walker alleges that the claim of MERS, as "nominee," and the claims of Wells Fargo and U.S. Bank, as servicer and former holder of the Note, constitute a cloud on the title of the Subject Property. Wells Fargo and U.S. Bank are not named anywhere on the Note or the Mortgage.

Trust 2005-10 was the only owner and legal holder of the Note and the Mortgage from September 1, 2005, until the moment the Trust was allegedly terminated. The title abstract reveals that no assignment of the Note or the Mortgage from Trust 2005-10 to any party was ever recorded on the Subject Property. Walker alleges that Wells Fargo, U.S. Bank, and MERS have no legal interest in the Note or the Mortgage that could allow them to collect payments under the Note and the Mortgage. She alleges that there is no genuine evidence of ownership: no valid assignment, no allonge, no bill of sale, no contract, no receipt, no substitution of trustee, and no payment. Walker claims that mortgagors have a duty to make payments to the correct mortgagee and a right to negotiate with the true owner of their mortgage. Walker alleges that only with a declaratory judgment from this Court can she know to which party to make her mortgage payments; payments which she does not dispute she owes.

Walker also alleges that Wells Fargo, without having purchased either the Note or the Mortgage, without any servicing rights, and without privity of contract with the mortgagees, sent Walker false monthly statements purporting to have authority to collect mortgage payments. Walker, relying on these representations, paid many of the purported mortgage bills sent by Wells Fargo. Walker alleges that Wells Fargo, by collecting funds from her without authority, has unjustly retained a benefit to the detriment of herself. Walker alleges that Wells Fargo accepted and retained the mortgage payments without applying them to the balance she owed to the true mortgagees.

Walker alleges that Wells Fargo willfully passed off its services as those of another—as those of the mortgagee of the Note and Mortgage. She further alleges that Wells Fargo has wilfully caused a likelihood of confusion and misunderstanding as to the source, sponsorship, approval, or certification of its services. She claims that Wells Fargo pretends to be a lender where it is not. Walker alleges that Wells Fargo has wilfully represented that its services have approval, characteristics, uses, and benefits that they do not have. She alleges that Wells Fargo is not authorized by the mortgagee, and that Wells Fargo cannot release the Mortgage if Walker were to make all payments under the Note to it. In short, Walker alleges that Wells Fargo has willfully engaged in conduct that creates a likelihood of confusion and misunderstanding as to who the true mortgagee of the Subject Property is.

Finally, Walker alleges that Wells Fargo acted as a debt collector, not as a creditor, because it was not providing credit to her and because she allegedly owes it no debt as a result of the alleged termination of the Trust. She claims that Wells Fargo's actions in allegedly wrongfully collecting mortgage loan payments from her constitute willful, malicious, and egregious violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act. Walker alleges that Wells Fargo committed these wrongs in the manner described above, by, for example, using false, deceptive, and misleading representations in connection with the collection of the alleged debt and falsely representing to Walker the character, amount, and legal status of the alleged debt.

## II. The Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the well-plead facts alleged in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy*, 51 F.3d at 717. To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true. . .state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-plead, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678. In deciding a motion to dismiss "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Furthermore, although the well-plead facts alleged in a complaint are entitled to the presumption of truth, documents attached to a complaint control over contrary pleadings and where an exhibit conflicts with the allegations of a complaint the exhibit controls over the contrary pleadings. *See Massey*, 464 F.3d at 645 (citing *Centers*, 398 F.3d at 933); *see, e.g., McClinton El*, 2008 WL 5111182 at *4. Therefore a plaintiff may plead herself out of court by attaching documents to the complaint that indicate that she is not entitled to relief. *See Massey*, 464 F.3d at 645.

Federal Rule of Civil Procedure 8(a)(2) thus imposes two requirements on every complaint in order for it to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.

2007) (citing *Twombly*, 550 U.S. at 555); *accord Iqbal*, 556 U.S. at 678. First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendant fair notice" of the claims alleged against it, which requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Concentra*, 496 F.3d at 776. Notice to the defendant alone, however, is not sufficient. To survive a motion to dismiss, the complaint must, in addition to providing notice to the defendant of the claims alleged against it, include factual allegations which "plausibly suggest a right to relief, raising that possibility above a speculative level." *See Id*. "The plausibility standard. . .asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that were merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679. Thus, a motion to dismiss may be properly granted in favor of the moving party where the plaintiff does not allege a plausible entitlement to relief either by failing to provide the defendant with notice of the claims alleged against it or by asserting only speculative or conclusory allegations in the complaint.

## III. Discussion

All five of the Counts alleged in Walker's Complaint are premised on her allegation that Trust 2005-10 was "terminated and dissolved" in March 2006. Walker bases that assertion on the Form 15 that the Trust filed with the SEC, and which she attached as Exhibit D to her Complaint. A review of the Form 15 shows that the Trust was not dissolved or terminated. As exhibits attached to a complaint control over contrary allegations in the pleadings, the Court must read Form 15 according to its terms, even if that means drawing inferences against Walker. *See Massey*, 464 F.3d at 645.

Form 15 is an SEC form that serves two purposes. Neither of those purposes is the termination of the entity filing the form. Form 15 is used to notify the SEC if (1) an entity is going to terminate its registration with the SEC, or (2) an entity is going to suspend filing of its required quarterly reports with the SEC because the entity's securities no longer fall under the SEC's filing requirements. *See* 15 U.S.C. § 78o(d)(2)(A); 17 C.F.R. § 249.323. In this case the Trust filed its Form 15 to notify the SEC that it intended to suspend the filing of its quarterly reports. The Form 15 that is attached to Walker's Complaint states that it was filed under two SEC rules: Rule 15d-6 and Rule 12h-39b)(1)(i). Rule 15d-6 relates to the suspension of the duty to file reports pursuant to Title I of the Securities Exchange Act of 1934. *See* 17 C.F.R. § 240.15d-6. Rule 12h-3(b)(1)(i) states that the duty to file quarterly reports may be suspended if the subject securities are held by less than three-hundred

persons. *See* 17 C.F.R. § 240.12h-3(b)(1)(i). Neither of these rules, nor any part of Form 15, provide for the termination of the filing entity. Thus, the Form 15 attached to Walker's Complaint did not terminate the Trust; rather it simply provided notice to the SEC that the Trust was suspending its reporting duties because less than three-hundred persons held securitized interests in the Trust. Indeed, the document attached to Walker's Complaint as Exhibit E describes the Trust's Form 15 as a "Notice of Suspension of Duty to File Reports." Form 15 does not establish that the Trust was terminated, and Walker's allegations to the contrary are baseless and contradicted by the Exhibits attached to her Complaint, which control over her contrary pleadings. *See Massey*, 464 F.3d at 645.

Walker alleges that Form 15 is entitled "Notice and Certification of Termination," thus evidencing that the Trust was terminated and dissolved. This is not the case. Because the plain language of the Form 15 attached to Walker's Complaint controls over her allegations to the contrary, the Court rejects as true Walker's assertion that the Trust was terminated and dissolved. Walker has therefore failed to plausibly allege that the Trust was terminated and dissolved. Furthermore, the February 28, 2012 letter sent by Wells Fargo's servicing unit, America's Servicing Corporation, which is attached to Walker's Complaint as part of her Exhibit F, establishes that the Trust still exists and owns the Note. Because the contents of an exhibit control over contrary allegations in the pleadings, *see Massey*, 464 F.3d at 645, Exhibit F controls and establishes the ongoing existence of the Trust

and the Trust's continued ownership of the Note. This in turn establishes Wells Fargo's right to collect on the debt from Walker as the servicer of her loan.

In Walker's response to the Defendants' Motion to Dismiss she argues that the question of the existence of the Trust is an issue of fact that can only be resolved through discovery. But this argument ignores Walker's failure to satisfy her threshold pleading obligation to assert sufficient factual matter to state a plausible entitlement to relief. *See Iqbal*, 556 U.S. at 678. Walker is merely *speculating* that the Trust was terminated, both in her Complaint and in her response to the Defendants' Motion to Dismiss. The SEC Form 15 attached to the Complaint shows that there is no factual basis for the claim contained in Walker's pleadings that the Trust was terminated and dissolved. The speculation that the Trust was terminated contained in Walker's response is not adequate to meet her pleading requirements. As a result, the Defendants should not be forced to incur the time and expense of discovery based on Walker's speculative and conclusory assertions which do not give rise to a plausible entitlement to relief. *See Brooks*, 578 F.3d at 581.

Walker's claims for violations of the FDCPA, the ICFA, and the DTPA, as well as her claims for unjust enrichment and quiet title are all premised on the mistaken assertion that the Trust was terminated and that therefore Wells Fargo had no right to collect mortgage payments as the servicer of the loan. No other conduct is alleged that could plausibly give rise to liability under any of the claims asserted in the Complaint. Walker acknowledges

that, assuming the Trust exists, U.S. Bank is the Trustee and Wells Fargo is her loan servicer. Because the Exhibits attached to the Complaint refute Walker's allegation that the Trust has been terminated and dissolved, the acts that allegedly form the basis for Counts I through V, namely the collection and application of payments for Walker's loan by Wells Fargo, were lawfully taken by it as the servicer of the loans in the Trust. There are no other allegations that can satisfy the pleading requirements for any of the five Counts asserted, and the conclusion that the Trust did not terminate or dissolve scotches any claim contained in Walker's Complaint upon which relief can be granted.

In her response to the Defendants' Motion to Dismiss Walker claims that the FDCPA claim contained in Count I of her Complaint should not be dismissed because the Act applies to mortgage loan servicers and because Wells Fargo fraudulently uses its status as servicer of an allegedly dissolved Trust in order to unjustly profit to the detriment of Walker and the true mortgagee. Walker argues that Wells Fargo pretends to enforce the security interest of a Trust which no longer exists. She claims that such activity defrauds not only herself, but also the true mortgagee and this Court. In addition to the fact that the Court concludes based on the Exhibits attached to the Complaint that the Trust did not dissolve or terminate, Walker's claim under the FDCPA must be dismissed for the additional reason that her Complaint does not contain sufficient allegations to establish that the FDCPA applies in this case.

The Act only applies to debt collectors, which includes persons or entities whose principal business purpose is to collect the debts of others, or loan servicers that receive servicing rights after a debt is in default. *See* 15 U.S.C. § 1692c(a); *Obi v. Chase Home Finance, LLC*, No. 10 C 5747, 2011 WL 529481 (N.D. Ill. Feb. 8, 2011) (Kendall, J.) (dismissing with prejudice plaintiff's FDCPA claim against defendant loan servicer because the loan was not in default when the defendant began servicing it and the FDCPA excludes loan servicers of debts not in default at the time it was obtained); *see, e.g., Cocroft v. HSBC Bank USA, N.A.*, No. 10 C 3408, 2012 WL 1378645, *11 (N.D. Ill. July 19, 2004) (dismissing FDCPA claim where plaintiff did not allege any facts demonstrating that the defendants were debt collectors). Walker's allegation that Wells Fargo acted as a debt collector under the FDCPA is asserted in the most conclusory way possible. Her only allegation with respect to this issue asserted in her Complaint is that "Wells Fargo acted as debt collector, not as a creditor, under the FDCPA." (Compl. ¶ 30). The Complaint therefore lacks any plausible allegations that rise above a purely speculative level to establish that Wells Fargo was a debt collector and this is therefore fatal to Walker's claim pursuant to the FDCPA.

Furthermore, the district court decisions from other jurisdictions cited by Walker in her response do not support her claim, but rather undermine it. In two of the three cases cited in Walker's response the courts dismissed the FDCPA claims pursuant to Rule 12(b)(6) because, as here, the plaintiffs in those cases failed to plead sufficient facts to state

a plausible claim to relief. *See Friend v. Fryberg, Buchanan, Smith & Frederick, P.A.*, No. 11-CV-1584 PJS/LIB, 2012 WL 503796, *6-*7 (D. Minn. Feb. 14, 2012) (plaintiff's FDCPA claim could not survive a motion to dismiss where the plaintiff set forth nothing more than "naked assertions" that the defendant violated the FDCPA without alleging sufficient facts as to how the Act was allegedly violated); *Katz v. Aurora Loan Serv., LLC*, No. 11-cv-1806-IEG (POR), 2012 WL 78399, *4-*5 (S.D. Cal. Jan. 10, 2012) (where a plaintiff's claims provide no more than conclusions without any factual support they fail to state a claim under the FDCPA). Furthermore, in both *Katz* and *Williams v. Wells Fargo Bank, N.A.*, the third case cited in response by Walker, the courts explicitly acknowledged that a mortgage servicer is *exempt* from liability under the FDCPA where it obtained the servicing rights of the loan *before the loan was in default*. *See Katz*, 2012 WL 78399 at *2; *Williams v. Wells Fargo Bank, N.A.*, No. C10-5880BHS, 2012 WL 72727, *5 (W.D. Wash. Jan. 10, 2012). These cases are in accord with those decided in this District; indeed by this Court. *See Obi*, 2011 WL 529481 at *5-*6. In this case Walker alleges that Wells Fargo obtained the servicing rights for her loan in 2005 and nowhere in the Complaint does she allege that her loan was in default at that time. Nor does Walker allege that Wells Fargo's principal business purpose is to collect the debts of others. Walker's Complaint therefore fails to state a plausible entitlement to relief under the FDCPA and her claim in Count I is dismissed for this additional reason.

Walker's claim to quiet title fails because she has not alleged that there is a cloud on her title, and because she admits that there is a valid mortgage on the Subject Property for which she owes a debt and therefore there is no cause in this case to remove the mortgage from the title of the Subject Property. "A 'cloud on title' is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 410 (Ill. App. Ct. 2010); *see also El-Bey v. Housing & Urban Development, et al.*, No. 11 C 7260, 2012 WL 1378680, *3-*4 (N.D. Ill. April 20, 2012) (dismissing claim to quite title where there was a valid mortgage on the property). A "cloud" on title is thus an unfounded legal or equitable semblance of title to property. Walker does not carry her burden to plead sufficient factual allegations establishing the Wells Fargo, U.S. Bank, and MERS have put a cloud on her title to the Subject Property because she admits that the Mortgage correctly secures a valid loan that was undisputably provided to her. *See El-Bey*, 2012 WL 1378680 at *3-*4. Walker admits that she executed the Mortgage and allowed it to be recorded on the title of the Subject Property in order to secure repayment of a loan of approximately $350,000.00. Walker does not allege that she has paid back the balance of the loan, nor does she allege that she is prepared to do so. In her response, Walker admits that "it is not the existence of the mortgage that Mrs. Walker disputes. She alleges she owes the debt. She acknowledges and reaffirms it." (Resp. at 4). Walker cannot state a claim to quite title

seeking to remove a lien created by her Mortgage to secure a debt that she admits she owes. *See Id*. Thus, Walker fails to state a claim to quiet title because she fails to allege any facts that would establish that the Mortgage is "unfounded or. . .would be inequitable to enforce." *Gambino*, 922 N.E.2d at 410; *accord El-Bey*, 2011 WL 1378680 at *3-*4. Walker has failed to plausibly allege that the Defendants are clouding her title. Therefore, there is no cause here to remove the Mortgage from the title to Walker's property. In response, Walker argues that the Defendants should "welcome" an action to quiet title as an opportunity to prove that they are in fact the appropriate parties to hold and service Walker's debt. This argument turns Walker's requirement under the relevant federal pleading standard on its head by forcing the Defendants to defend against a claim that does not first meet the threshold plausibility requirement to state a claim to relief under Rule 8(a)(2). Thus, Walker's claim to quiet title is dismissed.

## IV. Conclusion

The Exhibits that Walker attached to her Complaint establish that, contrary to her assertion of the opposite, Trust 2005-10 was not terminated or dissolved when the Trust filed its Form 15 with the SEC. This scotches Walker's claims for relief, because each of her claims rely on the unfounded premise that the Trust was terminated and that therefore Wells Fargo had no right to collect on her debt as the servicer of her loan. Furthermore, notwithstanding the fact that the Trust was not terminated, Walker's claim under the Fair

Debt Collection Practices Act additionally fails to state a plausible claim that Wells Fargo was a debt collector, and in any event, a servicer of a loan can only be liable under the Act where it attempts to collect a debt that is already in default, which Wells Fargo did not do in the present case. Walker's claim for quiet title does not plausibly allege that the Defendants have created a cloud over the title of the Subject Property because Walker admits that the Mortgage correctly secures a valid loan that was undisputably provided to her, and she cannot state a claim to quite title seeking to remove a lien created by her mortgage to secure a debt that she admits she owes. Therefore, there is no cause in this case to remove the Mortgage from the title to Walker's property. In addition, Walker failed to timely file her response to the Defendants' Motion on July 10, 2012, as required by an order of this Court. Thus, Walker's claims are dismissed for the additional reason that her failure to file a timely response operates as a forfeiture, which is a valid and independent basis for dismissal. *See Lekas v. Brilley*, 405 F.3d 602, 614-615 (7th Cir. 2005) (where plaintiff "did not present legal arguments or cite relevant authority to substantiate his claim in responding to defendants' motion to dismiss" his "claim has been waived"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042 (7th Cir. 1999) (Posner, J.) ("Our system of justice is adversarial, and our judges are busy people. . .An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so. . .by failing to reply responsively to the motion to dismiss. . .[plaintiff] forfeited

her right to continue litigating her claim.").  For all of the reasons set forth above, the

Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is

granted and Walker's Complaint is dismissed with prejudice.

_____

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 5, 2012